No. 10,917.

## GRUNSON ET AL. *v.* THE STATE.

CRIMINAL LAW.—*Larceny.*—*Obtaining Money by Fraud.*—C., a passenger on a railway train, was seated with G., when S. entered, wearing a badge and falsely pretending to be an express agent, and informed G. that if he wished his baggage taken to Cincinnati he must pay charges thereon. G. offered a bank check, which S. said he could not cash, but would do so at Cincinnati if C. would cash it and hold it till they reached that city. C. handed over the money, when G. and S. rushed from the train, taking both money and check. G. had no goods on board by express, and the whole proceeding by G. and S. was a pre-arranged trick concocted by them to get possession of C.'s money, with intent to steal it. *Held,* that it was larceny by both.

| | |
|---|---|
| 89 | 533 |
| 136 | 152 |
| 89 | 533 |
| 148 | 407 |
| 89 | 533 |
| 165 | 401 |
| 165 | 476 |
| 89 | 533 |
| 169 | 388 |

From the Criminal Court of Marion County.

*J. L. Mitchell,* for appellants.

*F. T. Hord,* Attorney General, *W. T. Brown,* Prosecuting Attorney, and *W. B. Hord,* for the State.

ELLIOTT, J.—Appellants were jointly tried and convicted of the crime of larceny. It appears from the evidence that Thomas H. Combs was a passenger on a railway train, having entered it at Chicago; that Grunson had taken and was sitting in a seat with Combs; that shortly before the train reached the city Smith entered the car and was introduced by Grunson to Combs, under the name of Adams; that he represented himself as an express agent; that Grunson had previously introduced himself to Combs as Mr. Harper, and had informed him that he was engaged in the business of buying and shipping furs, and had some goods on the way, which he intended to take to Cincinnati; when Smith came into the car he had on a badge and walked rapidly to Grunson, whom he addressed as Harper, saying to him that if he wanted his baggage forwarded to Cincinnati he must, under a recent rule, pay the charges. Grunson then took a bank check from his pocket, presented it to Smith, who looked at it and said, "The check is all right, but I have not the money that I can spare now to pay the difference," and suggested that Combs should let him have the money, hold the check until they got to Cincinnati, when he, Smith, would cash it. Thereupon Combs handed over the money, $45, but did not get the check, as Grunson rushed from the train as it entered the depot, and, taking the check with him, went off with Smith. It was also shown that the express companies had no agent on the train, and that Grunson had no goods in their charge. Other evidence was given tending to show guilt, but it is unnecessary to set it out, as all the questions argued are presented by the synopsis we have given.

Appellants' counsel contend that a case of larceny was not made out, and that the case was tried upon a radically wrong

theory. It is true, as counsel assert, that a person accused of a distinct crime can not be convicted of another and different specific offence.

There can be no doubt, under the evidence, of the felonious intent of the appellants to appropriate to their own use the property of Combs, nor can there be any doubt that this felonious intent existed prior to and at the time they obtained possession of the money. We have, then, two of the controlling elements of the crime of larceny, namely, the specific felonious intent and its existence at the time of the taking.

The principal and, in truth, the only point relied on by counsel is that the owner parted both with possession and title, and that there can, therefore, be no larceny. We know perfectly well that the general rule is, that, where the owner parts with title and possession, there is no larceny although there may be some other crime. This is, however, a general rule, to which there are marked exceptions, as well known and as fully recognized as the rule itself. Mr. Bishop, upon whom the counsel rely as authority, clearly recognizes this exception. 2 Bishop Crim. Law, section 813. In the case, strongly urged upon our consideration by counsel, of *Welsh* v. *People,* 17 Ill. 339, a conviction was upheld where money was procured from the owner by a fraudulent game known as the ball and safe game, and the court said : " It is a well settled rule that where a party obtains possession of goods by fraud and deceit, not with the intention of returning them, but with the design of appropriating them and depriving the owner of them, and of all remedy for their loss, and does so appropriate or dispose of them, that is as much a larceny as if the possession had been obtained against the will of the owner." In another of the cases cited by appellants, *Smith* v. *People,* 53 N. Y. 111, the court said of the case before it : " Here the jury have found the intent to steal at the time of taking, which is all that is required to constitute larceny, where the mere possession is obtained by fraud or trick." Much reliance is placed upon the statement in *Williams* v. *State,* 49 Ind. 367, where, in

speaking of the statute defining larceny, it was said that " This section, we think, does not make it larceny to obtain the property of another by fraud, lies, and false representations ; " but we are unable to perceive that appellants secure material support from this dictum. It is quite true that where there is no felonious intent to appropriate the property, existing at the time possession is obtained, there can be no larceny although there may be fraud. It is apparent from this examination of the authorities relied on by appellants, that their position is not sustained.

There are many well considered cases maintaining a view directly opposite to that of appellants. In our own case of *Huber* v. *State,* 57 Ind. 341 (26 Am. R. 57), the law was declared to be correctly laid down in Bicknell's Criminal Practice 335, where language very similar to that quoted from *Welsh* v. *People, supra,* was used, and it was said : " We think there was evidence tending strongly to show that the money was obtained from Walters by Huber by a mere trick, a fraudulently prearranged scheme or contrivance, with the intention of stealing it, and that, hence, the verdict is sustained by sufficient evidence." A conviction of larceny was sustained in a case where possession and property were parted with upon a fraudulent representation of the accused, although it was held that the original taking must be a trespass. Whart. Crim. Law, sec. 1865*a.* A trespass is any transgression or offence against the laws of nature or society, whether it relates to person or property. 3 Black. Com. 208. A writer, whose doctrines are regarded as authority in the true sense of the term, says : "And it seems, that where the property is obtained with a preconcerted design to steal it, the possession is supposed to continue with the true owner, whatever may be the means or the pretence under which the property is obtained." 1 Hawkins P. C. 145. This brings us to solid foundation in principle, for it is universally held that where goods are obtained by fraud the true owner may reclaim them against all persons except *bona fide* purchasers, and they are protected upon the ground that

commercial good requires it, and not upon the ground that the person guilty of fraud acquired title. *Parrish* v. *Thurston,* 87 Ind. 437; *Breckenridge* v. *McAfee,* 54 Ind. 141; Story Sales, section 172; *Badger* v. *Phinney,* 15 Mass. 359. We know that there has been much discussion upon the subject of larceny, and that many subtle distinctions have been made, but these discussions are, for the most part, as profitless as the ancient theological discussion whether angels could dance on the point of a needle.

There is no conflict in the evidence; none was given by the defence, and a case is made within the rule laid down by the most technical and exacting cases. The transaction was not complete, for the owner of the property did not get the check which was to have been delivered concurrently with the delivery of the money. Our opinion is that one who agrees to let another have money on a check is entitled to a genuine check, and that the transaction is not complete until such a check is delivered; but, however this may be, the prosecutor was unquestionably entitled to the check promised him, good or bad. We will not give heed to the claim of appellants that it was a worthless thing and would have done him no good; they are not in a situation to avail themselves of their own wickedness. The transaction was, therefore, not such as to pass the title to the property. In an old case cited in 2 East P. C. 677, it was said, according to this author, that the offence of the accused was larceny, " First, Because he should be said to have taken these goods with a felonious intent; for the act subsequent, viz. his running away with them, explained his intent precedent. Secondly, Because, although the goods were delivered, yet they were not out of the owner's possession by the delivery till the property was altered by the perfection of the contract; which was but inchoate, and never perfected between the parties." In further commenting on this case the author says: "It would bring great contempt on the justice of the Nation, as Hawkins somewhere observes, if its laws could be evaded by such tricks and contrivances as

these." As illustrating the general doctrine may be cited the old cases known as the " ring cases," which are cited and discussed in 2 East P. C. 678, and the cases of an analogous nature referred to by the same author. East P. C. 675, 680. In *Shipply* v. *People,* 86 N. Y. 375 (40 Am. R. 551), the owner sold to the accused goods to be paid for on delivery, and delivered them to the carrier, with instructions to collect the price before delivering to the purchaser. The latter received the goods and paid for them by a worthless check ; and he was held rightly convicted of larceny, the court, in the course of the opinion, saying : " The jury may have found that this was his scheme at the beginning, and thus that there was on his part a felonious intent—an *animo furandi*—pervading the transaction and continuing to the end ; that there was no delivery by the owner or parting with the title ; and, if so, the verdict was right." In *Hildebrand* v. *People,* 56 N. Y. 394 (15 Am. R. 435), the general question is fully considered, and the court said : " It is urged that this is not sufficient to convict, because the prosecutor voluntarily parted with the possession not only, but with the property, and did not expect a return of the same property. This presents the point of the case. When the possession and property are delivered voluntarily, without fraud or artifice to induce it, the *animus furandi* will not make it larceny, because in such a case there can be no trespass, and there can be no larceny without a trespass. *People* v. *McDonald,* 43 N. Y. 61. But in this case I do not think the prosecutor should be deemed to have parted either with the possession of, or property in, the bill. It was an incomplete transaction, to be consummated in the presence and under the personal control of the prosecutor." These expressions of the New York court are the more weighty because some of the cases in that court incline to a more technical rule than most of the American courts. The facts in the case of *Miller* v. *Commonwealth,* 78 Ky. 15 (39 Am. R. 194), were these : The defendant, by a pre-arranged scheme concocted with a confederate, had made it certain that a bet on a game should be lost, and fraudu-

lently induced the prosecutor to loan him money to wager on the game, and a conviction of larceny was sustained, the court placing its decision mainly upon the case of *Rex* v. *Horner,* 1 Leach, 305. In the recent case of *Justices* v. *People, ex rel.,* 90 N. Y. 12 (43 Am. R. 135), the doctrine of *Regina* v. *Thomas,* 9 C. & P. 741, was expressly repudiated, and it was said: "The relator left his restaurant with the coin under the pretence of obtaining change, and immediately gambled it away and did not return. These facts warranted the jury in finding that, when he left the presence of the prosecutor, he took the coin with him with the intent to steal it. This, within all the authorities, except the one hereinafter referred to, justified his conviction for larceny."

We think it clear that, where the uncontradicted evidence shows that, at and before the time of securing possession, the intent to steal had been formed, and trickery was resorted to in order to enable the accused to commit a theft, the offence is larceny, and must be so defined by the court. If there existed a mere intent to defraud and not to steal, then the offence is not larceny. In the case before us the evidence admits of but one interpretation, and that is, that the appellants had formed the intent to steal, and had preconcerted a fraudulent scheme for the purpose of executing this felonious intent.

We do not deem it necessary to discuss the instructions in detail; we think it enough to say that those given by the court are in harmony with the principle declared in *Huber* v. *State, supra,* and here approved, and that those asked by appellants are in conflict with it.

It is an established rule of practice that where an issue of fact is presented to the trial court and determined by it, the appellate court will respect that judgment where there is a conflict of evidence and the finding is fairly sustained. We can not, therefore, disturb the finding upon the question whether or not one of the jurors was asleep during the trial, and there is evidence supporting that decision.

Judgment affirmed.