March v. The State.

No. 14,786.

## MARCH v. THE STATE.

CRIMINAL LAW.—*False Representations.*—*Larceny.*—Where one bargains for goods under an assumed name, paying only a part of the agreed price for the same—the contract providing that the title to the goods shall remain in the sellers until full payment is made—and immediately upon receipt of the goods ships them to a distant State and follows them there, these facts show a preconceived scheme to obtain possession of the goods, and feloniously appropriate them, and constitute a larceny.

SAME.—*Larceny.*—*Trespass not Necessary to Constitute.*—It is not necessary that there should be a trespass in order to constitute a larceny. Where a fraudulent device or scheme is resorted to for the purpose of divesting the owner of title and possession, the offence is larceny.

SAME.—*Newly Discovered Evidence.*—*New Trial.*—A defendant in a criminal case can not obtain a new trial, on the ground of newly discovered evidence, by producing a letter exculpating him from the charge, and swearing that it was written by a person by whom it purports to be signed.

From the Marion Criminal Court.

*J. D. Hamrick* and *R. S. Turrell*, for appellant.

*J. L. Mitchell, J. W. Holtzman, H. T. Tincher* and *J. A. Pritchard*, for the State.

ELLIOTT, C. J.—The appellant prosecutes this appeal from a judgment declaring her guilty of larceny.

She was tried and convicted under the name assigned her in the record, which is the name she assumed while in the city of Indianapolis, but it is not her true name. She is a resident of a town in a distant State. She first visited the store of Born & Co., in Indianapolis, on the 7th or 8th day of March, 1888, and looked at some carpets and curtains, but did not then bargain for them. Either at that time or at another visit on the 15th, she told one of the salesmen that her name was Mrs. D. F. Kennedy; that she was from Noblesville, and had an income of $150 per month; that her husband was a

stonemason and had leased house number 184 North Tennessee street, in Indianapolis. After looking at the carpets and curtains on the 7th or 8th of March, she went to Mrs. Hubbard, who lived at number 184 North Tennessee street, and asked her if she would allow Mrs. Kennedy to come there and help make the carpets, and stated that Mrs. Kennedy owned the carpets. When she bargained for the goods she directed that the bill should be made out in the name of Mrs. Kennedy, and executed the contract under that name. The contract provides that the title to the goods shall remain in the sellers until the goods are paid for; it shows that only part of the price was paid, and that they were to remain at number 184 North Tennessee street until full payment. The goods were delivered at that place on the 15th day of March. About an hour after they were delivered, the accused told Mrs. Hubbard that Mrs. Kennedy wanted them shipped to her house. The goods were put in a box and were placed in the hands of an express company on the afternoon of the 15th day of March. The box was directed to Carrie Dickson, Newton, Iowa. It was delivered at the house of the accused at that place, and she and her daughter, Carrie Dickson, were present when it was delivered. False statements were made by the accused to various persons regarding the manner in which she obtained the goods, and other matters connected with the transaction.

The facts support the inference that the accused formed a fraudulent scheme to steal the goods before she secured possession of them. It is, indeed, impossible to infer any other conclusion. Not only do the facts require this conclusion, but they warrant the further inference that the appellant had formed a felonious intent to deprive the owners of their goods and appropriate them to her own use before she began the negotiations which enabled her to obtain possession of them. The false statements made by her, the devices resorted to by her to deceive the owners of the goods, and the shipment of them to Iowa, so soon after she obtained pos-

session of them, leave no room to doubt that she had preconceived a scheme to obtain possession of the goods and feloniously appropriate them.    The case against her is clear. The felonious intent existed at the beginning. . She meant from the first to feloniously carry away the goods, and to effect this purpose devised the artifices and tricks which enabled her to obtain possession of the property. The case is not within the border-land of conflict, but is within the domain of established law.    *Grunson* v. *State,.* 89 Ind. 533; *People* v. *Shaw,* 57 Mich. 403; *State* v. *Fisher,* 38 Minn. 378.

The owners of the property did not intend to transfer title, for they expressly stipulated that it should remain in them. They did not, in fact, intend to deal with the accused at all. They did not even intend to deliver possession of the goods to Mrs. Dickson or Mrs. Spaits, of Iowa, but to Mrs. Kennedy, of Indianapolis.    There was, therefore, really no effective transfer of possession to the accused.    *Alexander* v. *Swackhamer,* 105 Ind. 81.    She fraudulently induced the owners to believe that they were negotiating with Mrs. Kennedy, and were delivering the goods to her, when, in fact, as the accused knew, there was no such person in existence.

The doctrine that there must be a trespass in order to constitute a larceny is an antiquated legal fiction, which had, at most, a very slender support from the authorities, and which is now thoroughly exploded.    The better and sounder doctrine is, that, where a fraudulent device or scheme is resorted to for the purpose of divesting the owner of title and possession, the offence is larceny.    The better reasoned cases authorize the conclusion that the filmy gauze which separated cases where there was a fraudulent device from those in which there was an actual trespass, no longer obstructs or obscures the judicial vision.    A stronger and better rule has supplanted the one which gave force to a foundationless distinction and an unsubstantial abstraction.

Counsel assume that this is simply the case of a purchaser

of goods on instalments disposing of the goods before paying for them; but in this counsel are in error, as is evident from what we have already said in speaking of the artifices and false representations of the accused. Nor is this simply a case where the purpose of the accused was merely to obtain personal property without paying for it; for here there were tricks and devices clearly indicating a preconceived intention to feloniously deprive the owners of their goods and appropriate them. The line which separates this case from a mere fraudulent purchase of goods, with intent to hold them without paying for them, is neither dim nor uncertain, for the facts clearly indicate a criminal intent. Intent, it is scarcely necessary to say, may be inferred; indeed, it is almost always a matter of inference rather than of positive proof.

A defendant can not obtain a new trial on the ground of newly discovered evidence solely by producing a letter exculpating him from the charge, and swearing that it was written by a person by whom the letter purports to be signed. If the rule were otherwise, justice might readily be defeated by the defendant himself manufacturing testimony. Doubtless facts might be added which would make a case for a new trial, but such facts are not present here. The letter referred to in the appellant's affidavit would not be admissible in evidence, and there is no sufficient showing that the testimony of the alleged writer can be obtained.

The verdict is well supported by the evidence.

Judgment affirmed.

Filed March 7, 1889.