Stillwell *v.* State.

---

## STILLWELL *v.* THE STATE.

[No. 19,398. Filed November 27, 1900.]

CRIMINAL LAW.—*Instructions.*—*Record.*—Instructions in a criminal case can only be made a part of the record by a bill of exceptions. *p. 553.*

SAME.—*Larceny.*—*Evidence.*—Defendant engaged a horse and buggy at a livery stable to drive to the country to solicit insurance, saying he would return in the evening of that day. He met one of the men he was going to see, and, being informed that the other persons he desired to see were not at home, he drove to a town about forty miles distant, and wrote and mailed the owner of the horse a letter that he would be compelled to remain three or four days. He remained at the town soliciting insurance, put the horse in a livery stable, registered at a hotel, and made no effort to conceal his identity, nor to sell the horse, and again wrote the owner of the horse, and fearing he would not receive it as soon as he should, telegraphed, informing him of his whereabouts, and of his being detained, and was arrested on that evening. *Held,* that the evidence was insufficient to support a conviction of defendant of the larceny of the horse and buggy. *pp. 554-559.*

Stillwell v. State.

CRIMINAL LAW.—*Larceny.*—*Felonious Intent.*—Where possession of property is obtained by a bailee for hire, a subsequent appropriation of the property by the bailee is not larceny, unless the felonious intent to appropriate it existed in his mind at the time he obtained the possession.  *p. 559.*

From the Jackson Circuit Court.  *Reversed.*

*John L. Shrum,* for appellant.

*W. L. Taylor,* Attorney-General, *C. C. Hadley* and *Merrill Moores,* for State.

JORDAN, J.—Appellant was charged with having on August 5, 1899, at the county of Jackson, State of Indiana, feloniously taken and stolen a certain horse and buggy of the value of $150, the same being the property of one Allen S. Crane.  He was tried by a jury and convicted of the offense of grand larceny as charged, and over his motion for a new trial was sentenced by the court to be imprisoned in the Indiana State prison for the period of from one to fourteen years and to be fined in the sum of $1 and disfranchised for the period of one year.  From this judgment he appeals to this court and assigns as error the overruling of his motion for a new trial.  Two questions are presented.  (1) The alleged error of the trial court in giving certain instructions; (2) that the evidence is not sufficient to sustain the verdict of the jury.  The Attorney-General as the representative of the State, in his brief filed in this appeal, raises the question that the instructions are not in the record for the reason that they have not been made a part thereof by a bill of exceptions.  This the record discloses to be true and we therefore concur in this contention of counsel.  That instructions in a criminal case can only be made a part of the record by means of a bill of exceptions, has been so frequently decided by this court, and the rule is so well recognized by the bar, that the citation of authorities in support thereof would be useless.  At the very threshold, in the examination of the evidence, we are confronted with the concession of the learned Attorney-General to the effect that

under the evidence the appellant ought not to have been convicted of the crime of larceny. In closing his brief he says "Believing as I do that the evidence is insufficient to sustain the verdict, I cannot conscientiously ask the court to affirm the judgment of the court below." This frank admission upon the part of the State's chief legal representative, is certainly to be commended, for it is not his duty in the appeal of a criminal cause to this court, to endeavor to uphold the judgment of the lower court when he is satisfied that such judgment is impressed with reversible error. We have fully examined and considered all of the evidence give in this prosecution on the trial in the lower court and the material part thereof is substantially as follows: Appellant is a man forty-nine years of age and prior to the time of his arrest on the charge in question he was engaged in life insurance business for the John Hancock Life Insurance Company. He would travel through the country and solicit life insurance from persons, and also endeavor to secure loans of money for persons from the company which he represented. About a year before the time he obtained the horse and buggy, alleged to have been stolen, he had been at Seymour, Jackson county, Indiana, and had made the acquaintance of one John Ridlin, who was an employe at that time in the livery stable of a Mr. Crane in that city. In the latter part of July, 1899, appellant returned to Seymour for the purpose of soliciting insurance through the country. He went to Crane's livery stable and there met Mr. Ridlin who was still in the employ of Crane at his stable. He gave Ridlin his business card and asked if he remembered him and Ridlin replied that he did. On that occasion appellant hired of Ridlin a horse and buggy belonging to Crane's stable and drove into the country. Prior to August 5, 1899, as the evidence shows, he hired a horse and buggy from the same stable some five or six different times and made trips in the buggy out into the country. On Thursday evening, August 3, 1899, he seems to have

engaged a horse and buggy at this stable and directed that
the conveyance be sent around on Saturday morning,
August 5th, at 8 o'clock to the hotel in Seymour where he
was stopping. Ridlin took the horse and buggy so engaged
by appellant to the hotel upon the morning in question. Ap-
pellant told him at that time to have the bill made out for
the amount which he owed for livery hire and when he
returned in the evening of that day he would pay it. Ridlin
turned the horse and buggy over to appellant and he started
to drive to Cortland, a small town about five or six miles
from Seymour, and was also intending to see some persons
at Freetown and Surprise. On the road to Cortland he met
Dr. Whitted, whom he was intending to see at Cortland.
He and Whitted talked over the business of life insurance
and he explained to the doctor the plans of his company
for which he was soliciting insurance. In this conversation
he inquired of Whitted as to the best road to Bloomington
in Monroe county, a county which is adjacent to that of
Jackson. In this conversation appellant incidentally told
Whitted that the horse and buggy belonged to him. After
leaving Dr. Whitted he drove on to Surprise, and at this
latter town he received information that the persons he de-
sired to see at Freetown were not at home. After leaving
the town of Surprise, and when near Freetown, he wrote and
mailed a letter to Mr. Crane, the owner of the horse and
buggy, informing him that in order to complete his business
he would be compelled to remain over Sunday, and would
not return to Seymour until Monday evening. This letter
was received by Crane in due course of the mail, and was
introduced in evidence at the trial by the State. Appellant
when near the town of Kurtz on the road leading to Bloom-
ington met a man with whom he conversed in regard to life
insurance, and inquired the road to Maumee, saying he
wanted to see a Mr. Hoover who resided there. He stopped
at this latter town and had a talk with Hoover in regard to
his taking life insurance, and informed Hoover that he was

going to Bloomington. After leaving Maumee he went on to Bloomington reaching there some time in the evening of August 5th. He stopped at the Gentry hotel, the leading hotel in that city, and registered his true name on the hotel register, and placed the horse in a livery stable. Appellant was acquainted at Ellettsville with a Mr. Fryhofer, a banker and the cashier of the Ellettsville bank. This latter town is situated on the Monon railroad and is about six or seven miles from Bloomington and about forty miles from Seymour. Appellant had previously sold to Fryhofer's bank some notes and had transacted other business with the same bank. After reaching Bloomington he telephoned to Fryhofer that he was at the latter place and he was requested by Fryhofer to come over to Ellettsville. It seems that appellant had previously negotiated some loans for the Central Union Life Insurance Company, and had made arrangements with Mr. Fryhofer's bank that in the event this company did not accept these loans that he would turn them over to the Ellettsville bank, which, it seems, had agreed to accept them. Upon Fryhofer's request appellant left Bloomington the next day, Sunday, and went to Ellettsville. On reaching this town he stopped at the hotel and placed the horse in a livery stable. He remained at Ellettsville from the time he arrived there on Sunday, August 6th, until the following Saturday, when he was arrested upon the charge of the larceny of the horse and buggy. While at Ellettsville he employed his time in driving out into the country soliciting applications for insurance and endeavoring to secure loans of money for persons from the company. He was frequently, during the time he was at Ellettsville, at Fryhofer's bank and prepared some of the applications for insurance which he had taken at that bank. He had previously sold, as we heretofore stated, to the Ellettsville bank some notes. The bank, it seems, had instituted suit upon one of the notes obtained from appellant and by him indorsed to the bank, the maker of which claimed that he

Stillwell v. State.

had a defense thereto, and the trial had been set before a justice at Ellettsville for Friday, August 11th. After appellant had been at Ellettsville a few days Fryhofer requested him to remain over for this trial to be a witness for the bank and he consented to do so. On Friday morning, August 11th, appellant wrote a letter to Mr. Crane, the owner of the horse, which letter was received by Crane on Sunday, August 13th, and was introduced in evidence by the State. By this letter he informed Crane of his whereabouts and in regard to his detention and that he would return in a few days and would settle all bills due for the hire of the horse and buggy. This letter bears the date of August 11th and was mailed August 12th. According to appellant's statement he gave this letter the day it was written to a porter of the hotel at Ellettsville, where he was stopping, to mail, and the porter neglected to mail it until Saturday, August 12th. On the morning of that day appellant learned that the letter had not been mailed on Friday, and fearing that for this reason Mr. Crane would not receive it as soon as he should, he sent a telegram to Crane on Saturday the 12th about 2:30 o'clock p. m. informing him where he was and of his being detained. This telegram is as follows, and was introduced in evidence by the State: "Ellettsville, Ind., Aug. 12, 1899. Crane & Son, Seymour, Ind. Am detained here on business. Will return next week. Will send check on Monday to cover bill. All O. K. [Signed] H. M. Stillwell."

It is disclosed that this telegram was received at Seymour at 3:12 o'clock p. m. of the day it was sent. Mr. Crane, it appears, did not receive it that early. On Saturday, August 12th, Crane in his endeavor to locate appellant learned that he had been at Bloomington and had gone from there to Ellettsville, and thereupon he telephoned to the sheriff of Monroe county to go to Ellettsville, arrest appellant, and get the horse. Appellant testifies that he did not receive information that he was to be arrested until about 4 o'clock p. m.

on Saturday, August 12th, and in this he is corroborated by Mr. Fryhofer. He was arrested by the officers about one hour after he received this information. They arrested him without a warrant and he made no effort to escape but went with the officers willingly, protesting that he was innocent of the crime alleged against him. There was no evidence to show that appellant made any attempt or offered to sell or in any manner dispose of the horse and buggy in question. There is an entire absence of evidence showing that he made any effort or endeavored to hide or conceal his whereabouts or his identity, but upon the contrary he seems, as the evidence shows, to have disclosed on all occasions his true name and the place or places where he was going. We certainly concur in the conclusion reached by counsel for the State in respect to the insufficiency of the evidence to support the conviction of the appellant of the larceny of the horse and buggy in controversy. It is not a case upon which there may be said to be some evidence to sustain all of the essential elements necessary to constitute the offense of which appellant was charged and convicted, but is one in which there is a manifest failure of the evidence to establish one of the material or cardinal ingredients in the crime of the larceny as charged, namely, that of the existence in the mind of appellant of the felonious intent at the time he obtained the horse and buggy in controversy. The crime of larceny in a legal sense is said to be committed when a person wrongfully takes and carries away the personal goods of another, without any color or pretense of right, with the felonious intent to deprive the owner, without his consent, of such property, or to appropriate it to the use of the taker. *Robinson* v. *State,* 113 Ind. 512. In the case last cited Mitchell, J., speaking for this court said: "The taking and carrying away are felonious or not, depending upon whether the taker intended at the time permanently to deprive the owner of his property without his consent, or whether he merely intended temporarily to use it wrong-

fully, mischieviously or wantonly, it may be, and then return or abandon it to the owner, without substantial injury. Taking, though wrongfully, for a mere temporary purpose, is not larceny. *Umphrey* v. *State,* 63 Ind. 223; *Starck* v. *State,* 63 Ind. 285; *State* v. *Wingo,* 89 Ind. 204; 1 Whart. Crim. Law §885." Of course the rule is well settled that the crime of larceny may be committed although the possession of the property alleged to have been stolen is obtained with the consent of the owner, if such consent is procured through deception and with the felonious intent not to return the property but to appropriate it to the taker's own use. *March* v. *State,* 117 Ind. 547; *Fleming* v. *State,* 136 Ind. 149. There can be no reason, however, for asserting that the case at bar, under the circumstances, falls within this rule of the criminal law. The evidence shows that appellant obtained possession of the property in controversy as a bailee for hire. The rule is elementary in such cases that a subsequent appropriation of the property by the bailee is not larceny, unless the felonious intent to appropriate it existed in his mind at the time he obtained the possession. The evidence in this case is utterly incompatible with such a theory. While it may be said that the act of the accused in detaining the horse longer than he ought to, without the consent of the owner, was reprehensible and a breach of good faith, still such wrong is not punishable by the law pertaining to larceny.

Without further comment we conclude under the circumstances that the court erred in denying appellant's motion for a new trial. The judgment is therefore reversed, and the cause remanded to the lower court, with instructions to sustain the motion for a new trial. The clerk of this court will issue the proper warrant for the return of the prisoner from the Indiana State prison to the custody of the sheriff of Jackson county. Monks, J., was absent.