## NEWBY *v.* THE STATE OF INDIANA.

[No. 21,804. Filed April 27, 1911.]

LARCENY.—*Fraudulent Trick.*—*Sales.*—*Worthless Mortgages.*—*Evidence.*—Evidence that defendant gave to the prosecuting witness, in exchange for a piano, a note endorsed by him and secured by mortgage, represented by defendant to be good, the defendant stating that he would not "let it go by," and that he was amply able to take care of it, the mortgage containing, on its back, an affidavit of the mortgagor that he was the owner of the property, that it was unencumbered, and that the affidavit was made to induce defendant to loan $300 to the mortgagor, that defendant pointed out an automobile which he said that he owned, that when the note matured, the prosecuting witness tried to collect

it and failed, that defendant refused to disclose the whereabouts of the mortgagor, that the mortgagor had in fact received nothing from defendant, or from any one for the note, sustains a conviction for the larceny of such piano.

From Criminal Court of Marion County (38,350); *James A. Pritchard*, Judge.

Prosecution by The State of Indiana against James M. Newby. From a judgment of conviction, defendant appeals. *Affirmed*.

*H. N. Spaan*, for appellant.

*Thomas M. Honan*, Attorney-General, *Thomas H. Branaman*, *E. M. White* and *James E. McCullough*, for the State.

MYERS, C. J.—Appellant was indicted, tried, convicted and sentenced for grand larceny in the alleged stealing, taking and carrying away of a piano of the value of $300.

The theory of the State was that the piano was procured by trickery and fraudulent representations. The theory of appellant is that there is no evidence in the record, direct or inferential, of any trick or fraud, and hence that the verdict and judgment are wholly without evidence to support either, and this is the sole question presented. The error assigned is in overruling the motion for a new trial.

The facts disclosed by the evidence most favorable to the State are as follows: Currens and another were piano dealers in the city of Indianapolis. Currens, who transacted the business with appellant, had known the latter about one year prior to December, 1907, when appellant went to his place of business and asked to exchange a note he had for a piano for his daughter, to be given her as a Christmas present, representing that the note was for $300, bearing eight per cent interest. He asked the prosecuting witness what he had in the way of a piano that he would exchange for the note, showed the witness the note, stated that it was given for money loaned, and was secured by mortgage on forty acres of land in Scott county, Indiana. Witness

asked appellant if he would indorse it, and he said "certainly," he would. Witness said to him that he would not take it without his indorsement, and as it had only eight months to run he thought it was a fair exchange; that he did not believe in letting the instrument go without a lease, regardless of the mortgage, and appellant said that under no considerations "would he let it go by," as the property was worth more, and that he was amply able to take care of it. Appellant in a day or two brought in the mortgage and an abstract of the title, and gave the note, the mortgage, and the abstract of title to Currens. The note was dated November 21, 1907, was due in one year, payable in bank, and was apparently secured by a mortgage upon forty acres of land in Scott county, Indiana. Upon the back of the mortgage was an affidavit by one Miller, bearing the same date as the acknowledgment of the mortgage, and stating that he was the owner of the real estate in fee simple, that it was free and clear of encumbrance, or of any claim, interest or title of any other person, and that the affidavit was made for the purpose of inducing appellant to loan to the affiant $300, to be secured by a mortgage upon the real estate therein described. Appellant requested that the piano be sent to his daughter, which was done, and he was given a formal bill of sale for the piano, which on the same day he formally assigned, for an alleged valuable consideration, to his daughter, copying the form of the original bill of sale, and indorsing it. Currens, at the time the note, mortgage and abstract were presented to him, examined them. He was not an attorney. On cross-examination Currens testified that appellant, when he first consulted him about the piano, asked to be shown the piano which he (Currens) was willing to trade for the note, and explained that one Calpus had previously been to see him about trading a piano for the note, and asked about receiving a commission in case he effected a sale of a piano, and that he had then agreed to, and did pay him a commission on the sale. He also testified that

it was a day or two after appellant came in the first time until he came the second time, and brought with him the note, mortgage and abstract of title; that he made no inquiry as to the value of the land; that appellant told Currens he could not have the land for three times the amount, as he had sold the other forty acres for $800, and "that he would not let it go by;" that he pointed out a valuable automobile in which he came to Curren's store, and claimed to be the owner thereof, and stated that he could not afford to have a foreclosure suit brought; that shortly after he (Currens) had received the note and mortgage, he learned that the land was not worth half the debt; that he kept the note and mortgage until the debt became due, when he sought to find Miller—the maker—and failed; that he inquired about Miller, and where he could be found, and was informed by appellant that Miller was a carpenter living in Indianapolis; that he worked in different places; that he saw him on the streets frequently, but he did not know where he lived; that Currens asked to be placed in communication with him, or to be called, if Miller came to appellant's office; that a number of calls were made upon appellant to learn the whereabouts of Miller, with the result that appellant stated that he had seen him, but did not communicate with Currens at any time. The witness then proposed to make some discount if appellant would pay the note, but he said he could not pay it, but that it was good. The witness then put it in the hands of an attorney, and the latter attempted to locate Miller, without avail, and for that purpose called on appellant three or four times, and was informed by him that Miller was in Indianapolis, that he did not know where he lived, but that he had seen him. The attorney proposed to him that if he would produce the man—Miller—who had signed the note, he would turn the note over to him, and release him from liability. Miller was not produced, but there is abundant evidence that there was such a man; that he lived in Indianapolis; that he was a carpenter, and worked

at his trade in the summer and as a porter about saloons in the winter; that a fall from the roof of a house on July 3, 1909, killed him; and that he had a son and a daughter living in Indianapolis. There was evidence that Miller was frequently at appellant's office prior to the making of the note, and the evidence is open to the inference that appellant did not wish Miller to be found, and this is a strong circumstance in the case, as tending to show fraud, from the possible knowledge of appellant that the production of Miller might disclose the true conditions. After the note became due, one Tongret obtained possession of the note and mortgage from the attorney of the prosecuting witness, in some way not fully explained by the evidence, and gave them to appellant, upon his procuring a deed from Miller to the prosecuting witness for the real estate, which the latter declined to accept when the deed was offered, for the reason given, that Miller had no title. Miller in fact received nothing from appellant, nor from any one for the note, but the latter claimed to have agreed to let Miller have a half interest in 250 acres of land in Tennessee, which appellant claimed to own, and which he claimed to have conveyed directly to one Littell, who was the same person who had made the deed to Miller for the Scott county land. Littell's only claim upon, or interest in the land, and Miller's as well, was a tax deed executed in 1902 upon a sale for $4.90. There was a mortgage for $581.06 on the land, which last recited facts were disclosed by the so-called abstract of title delivered by appellant to Currens with the note and mortgage, which brought the claim, such as Littell had, down to him. The abstract was not certified to. About April 10, 1910, appellant furnished an alleged continuation, which showed that Littell conveyed his claim to another person on October 1, 1907, who conveyed to a third person on December 2, 1907, but neither of the last deeds was recorded until December 5, 1907. On November 14, 1907, Littell conveyed to Miller, and appellant testifies that he

knew of the conveyance from Littell to Miller. Miller's deed was recorded December 12, 1907, the consideration named being an exchange of property and $1. There is no evidence of any other inquiry as to the responsibility of appellant than as herein shown; nor any evidence that he did not own an automobile, or that Currens had knowledge as to what, if anything, appellant did have, nor evidence as to the actual value of the land, which, however, is immaterial, in view of the want of title in Miller. Appellant testified that he had loaned to Miller $300 on the land, but his testimony is fairly open to the inference that the real transaction was between himself and Littell, by which, in the transfer of the Tennessee lands to Littell, the Scott county lands were transferred to Miller, as the tool of appellant, and for his benefit, and that he procured Miller to make the affidavit as to title and freedom from encumbrance, and used that affidavit in bringing about a trade for the piano, evidently being fully advised as to the conditions which the abstract he furnished Currens disclosed.

Appellants' contention is that this state of the evidence shows no more than "puffing," or an opinion as to values, and that Currens had the same opportunity for knowing the title and character of the holding, as he had, and that his acts did not constitute a fraud. The conditions however were not equal. Appellant had knowingly, and we must assume purposely, procured an affidavit to be signed by Miller that he had a fee-simple title, that it was free from encumbrance, and that he had loaned $300 to Miller, and he so directly represented, and this he used to deceive Currens. It was not only false, but deception was manifestly practiced in presenting it, with a view to obtaining the piano by means of the deception; for it is quite certain that had the owner known the facts, he would not have parted with the possession, and equally certain that it was in pursuance of a prearranged plan to obtain the property. The note and mortgage were worthless, and appellant knew it.

He at least knew that he had not loaned $300, as he represented, and as he procured Miller to swear, and Currens could not know that this was false. The evidence is fairly open to the inference that when he obtained the piano he did not intend to pay for it, and that he procured it by means of a fraudulent scheme, cunningly devised, through the Miller affidavit and his express representation that he loaned $300 to Miller. Whether appellant had loaned $300 to Miller was a material and controlling fact, as it went not only to his good faith, but also to fortify the questions of title and value.

Littell had made a qualified warranty deed to Miller as shown by the abstract, restricted to his interest, and while appellant testified that Littell was financially responsible, and there was no other evidence upon the subject, the jury may have inferred, from the fact that he made a second qualified deed for the property before the time for recording the first had expired, that it was the act of an irresponsible person, and that there was a conspiracy between appellant and Littell, from the fact that Littell made the second deed, and from the fact of the close relations shown between them, and their dealings involving this same real estate, and from the fact of the affidavit of Miller as to the loan, and appellant's representations in regard to it, which were confessedly false; and it was a fair inference from the evidence that it was a scheme to defraud. It is not without force that Littell was not a witness, and this and the action of appellant with respect to ascertaining the whereabouts of Miller were fair subjects of inference by the jury as to the question of the good faith of appellant as relating to his representations of having loaned $300 to Miller, who, it is fair to presume, if discovered, would have at once disclosed the want of consideration for the note, and the deception practiced. The cause was submitted to the jury upon fair instructions as to the necessary elements to constitute larceny, and we cannot say that there was not evidence to justify their verdict. *Fleming* v. *State* (1910), 174 Ind.

264; *Towns* v. *State* (1906), 167 Ind. 315, 119 Am. St. 501; *Williams* v. *State* (1905), 165 Ind. 472, 2 L. R. A. (N. S.) 248; *Crum* v. *State* (1897), 148 Ind. 401; *Deal* v. *State* (1895), 140 Ind. 354; *March* v. *State* (1889), 117 Ind. 547; *Grunson* v. *State* (1883), 89 Ind. 533, 46 Am. Rep. 178; *Rhodes* v. *Green* (1871), 36 Ind. 7; *Tyler* v. *Davis* (1906), 37 Ind. App. 557.

The judgment is affirmed.