No. 11,013.

## THE STATE *v.* WINGO.

CRIMINAL LAW.—*Embezzlement.*—*Larceny.*—*Statute Construed.*— *Master and Servant.*—*Conversion.*—Whatever would be embezzlement under the act of 1879 (Acts 1879, p. 126) would not be larceny, though it might have been larceny before the passage of that act, that act having the effect of so modifying by implication the older statute defining larceny. Hence a servant who, being without fraud entrusted with the possession of his master's goods, feloniously sells and thus converts them to his own use, is now guilty of embezzlement and not of larceny.

From the Vigo Criminal Circuit Court.

*F. T. Hord,* Attorney General, and *J. W. Shelton,* Prosecuting Attorney, for the State.

*T. W. Harper* and *J. M. Rees,* for appellee.

HAMMOND, J.—This is an appeal by the State upon questions of law reserved at the trial.

The appellee was charged in the indictment with the larceny of two mules from David Pugh. There was a trial by jury and a verdict of acquittal. The evidence is in the record, and shows, without conflict, the following facts:

In the spring of 1881 the appellee was in the employment of David Pugh, as a farm hand, and in hauling corn to market for Pugh, to Terre Haute; on the day of the alleged larceny, in March, 1881, Pugh sent him to that city with the two mules

and a wagon loaded with corn, directing him to sell the corn and collect the money for it, and to return the same day. The appellee did not have permission to sell the mules. On reaching the city, before selling the corn, William R. Hunter met him and proposed to buy the mules. Appellee informed him that he would sell them after disposing of his load of corn. Afterwards, on the same day, he met Hunter again and informed him that he was ready to sell the mules, and drove to Hunter's livery stable. The price, $250, was agreed upon, and he sold and delivered the mules to Hunter and received for them money through a check on the bank. He gave Hunter a bill of sale, signed with his own name. He left the wagon and harness at the livery stable, saying that he would soon return for them. When next heard from he was in Kentucky. Hunter was acquainted with the appellee and with the mules, and knew they belonged to Pugh. He supposed the appellee had a right to sell them, but made no inquiry of, and received no statement from, the appellee as to his authority in this respect.

The attorney for the appellant requested the court to give the jury this charge:

"If the jury find from the evidence that the defendant, in the year 1881, in Vigo county, and State of Indiana, was in the employment of David Pugh as servant or teamster, and had in his custody the team of mules of said Pugh, to haul to the city of Terre Haute a quantity of corn, and on the day of said hauling was directed by said Pugh to deliver the corn in said city and return the same day with said team of mules, and that the defendant, while having the mules in his custody as aforesaid, took and carried or drove the same to the livery stable of Fouts & Hunter, in the city of Terre Haute, and then and there sold and delivered the same to said Fouts & Hunter, or to William R. Hunter without the knowledge, consent or authority of said David Pugh, and with the felonious intent of then and there converting said mules to his

own use, then he is guilty of larceny of said mules and you should so find."

This instruction the court refused to give, but gave the jury, at the request of the appellee, the following:

" 1. If the jury find from the evidence that the defendant was the employee of the prosecuting witness Pugh, and was working for Pugh upon his farm, and that Pugh sent the defendant to Terre Haute with a load of corn in a wagon with the mules charged to have been stolen, and that the defendant, while he still had possession of the mules, sold them, then he is not guilty of larceny, and you should find him not guilty.

" 2. Larceny is the felonious stealing, taking and carrying away of the personal goods of another. If you find from the evidence that the defendant had the possession of the mules, with the consent of the owner, and sold them, you should find for the defendant.

" 3. If the defendant had the lawful possession of the mules and sold them, then there was no such felonious taking as the law requires in a case of larceny, and you should find the defendant not guilty.

" 4. If the servant, while in the employment of his master, has entrusted to his care any personal property of his master, and he feloniously sells and converts the same to his own use, he is, under the law of Indiana, guilty of embezzlement, but is not guilty of larceny."

The refusal of the court to give the instruction asked by the State, and the giving of those requested by the appellee, were duly excepted to by the appellant's attorney, and these rulings are assigned for error in this court.

The principle is well settled that to constitute a larceny there must be a felonious taking of the property. When property, which is lawfully in the custody of an employee or bailee, is criminally appropriated to the use of such employee or bailee, the offence may be embezzlement, but it can not

The State *v.* Wingo.

be larceny. *Keely* v. *State*, 14 Ind. 36; *Hart* v. *State*, 57 Ind. 102; *Jones* v. *State*, 59 Ind. 229; *Umphrey* v. *State*, 63 Ind. 223; *Starck* v. *State*, 63 Ind. 285; Moore Crim. Law, section 918.

The evidence shows that the appellee was entrusted with the property by the owner. There is no evidence that he used fraud in procuring possession of it; nor is there any evidence of a criminal intent until after he arrived in the city. The criminal purpose probably entered his mind for the first time when Hunter proposed to purchase the mules. There was an entire absence of proof of a felonious taking of the property.

As the possession of the servant is the possession of the master, it may be that in the absence of a statute upon the subject of embezzlement, the evidence in this case would authorize a conviction for larceny. 2 Bishop Crim. Law, sections 853, 856; 2 Whart. Crim. Law, section 1840.

But the evidence clearly brings the appellee's act of converting to his own use his employer's property, within the provisions of the embezzlement act of March 21st, 1879, which was in force when he committed the wrong complained of. Acts 1879, p. 126. This act was later than the one then in force relating to larceny, and it can hardly be thought that the Legislature intended to make the same acts criminal under different statutes, defining separate offences. The rule is familiar that a statute, so far as it covers the same subject-matter of a former statute, repeals the previous enactment by implication.

Our conclusion is that the court below did not err in refusing the instruction tendered by the State, nor in giving those requested by the appellee.

The appeal is, therefore, not sustained.