COMMONWEALTH *vs.* DENNIS H. LANNAN.

Suffolk.  February 2, 1891. — February 25, 1891.

Present: FIELD, C. J., C. ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Larceny — Possession — Fraud.*

If a person fraudulently obtains possession of a large fund, to a small part of which he is entitled, with intent at the time to misappropriate the entire fund to his own use, and the owner does not part with the title, the offence is larceny.

An attorney employed to ascertain the price of land found that it would be one hundred and twenty-five dollars, but told his employer it would be three hundred and twenty-five, including ten dollars for his own services. The employer assented to the terms, and gave directions as to the deed, and when it was ready met with the seller's agent and the attorney. The attorney approved the deed, and said to the employer, "Pay over the money," whereupon the latter counted out three hundred and twenty-five dollars in bills on the table in front of the attorney, who, after counting it, took it from the table, and, asking the agent to go into the next room, handed him one hundred and twenty-five dollars, and, returning to the employer, gave him a receipt for ten dollars and kept the rest of the money. *Held,* that the property in the bills and the possession remained in the employer while they were in the attorney's hands; and that the offence was larceny.

INDICTMENT for the larceny of certain "promissory notes, of the amount and of the value in all of three hundred and fifteen dollars." At the trial in the Superior Court, before *Barker*, J., the jury returned a verdict of guilty; and the defendant alleged exceptions, which appear in the opinion.

*J. W. Corcoran,* for the defendant.

*A. E. Pillsbury,* Attorney General, (*C. N. Harris,* Second Assistant Attorney General, with him,) for the Commonwealth.

HOLMES, J. The defendant is indicted for the larceny of promissory notes, the property of one Teeling, and has been found guilty. The case is before us on exceptions to the refusal of the court below to rule that the evidence was insufficient to support the indictment, and also to the instructions given to the jury. The evidence tended to prove the following facts. The defendant was an attorney employed by Teeling to ascertain the price of certain land. The price mentioned to him was one hundred and twenty-five dollars. He told Teeling that the lowest price was three hundred and twenty-five dollars, three hundred

dollars to go to the owners of the land, fifteen to Bent, the agent, with whom the defendant communicated, and ten dollars to the defendant. Teeling assented to the terms, and gave Bent directions as to the deed. When the deed was ready, Teeling, Bent, and the defendant met. The defendant approved the deed, and said to Teeling, "Pay over the money." Teeling counted out three hundred and twenty-five dollars on the table in front of the defendant, who counted it, took it from the table, and requested Bent to go into the next room. He then gave Bent one hundred and twenty-five dollars of the money, returned to Teeling, gave him a receipt for ten dollars, and kept the rest of the money. The court instructed the jury, " that upon the evidence they might find the defendant guilty of larceny if they were satisfied that he had obtained the money of said Teeling by false premeditated trick or device; that although Teeling might have given the manual custody of the money to the defendant, nevertheless the legal possession would remain in Teeling under such circumstances, and the larceny would be complete when the defendant, after thus getting possession of Teeling's money and inducing him to count out one hundred and ninety dollars more than was needed, appropriated it to his own use."

When the defendant took up the money from the table it had not yet passed under the dominion of Bent, who represented the opposite party. The defendant did not receive it as representing the opposite party; he purported to be acting in the interest of Teeling. The jury would have been warranted in finding that Teeling impliedly authorized the defendant to take up the money from the table, but they only could have found that he allowed him to do so for the purpose of immediately transferring the identical bills, or all but ten dollars of them, to Bent under Teeling's eyes. Subject to a single consideration, to be mentioned later, there is no doubt that in thus receiving the money for a moment the defendant purported at most to act as Teeling's servant or hand, under his immediate direction and control. Therefore not only the title to the money, but the possession of it, remained in Teeling while the money was in the defendant's custody. *Commonwealth* v. *O'Malley*, 97 Mass. 584. If the defendant had misappropriated the whole sum, or if he misappropriated all that was left after paying Bent, the offence

would be larceny. *Commonwealth* v: *Berry*, 99 Mass. 428. *Regina* v. *Cooke*, L. R. 1 C. C. 295; *S. C.* 12 Cox C. C. 10. *Regina* v. *Thompson*, Leigh & Cave, 225, 230. 2 East P. C. c. 16, §§ 110, 115. See further *Commonwealth* v. *Donahue*, 148 Mass. 529, 530, and cases cited.

The instructions made the defendant's liability conditional upon his having obtained the money from Teeling by a premeditated trick or device. If he did so, and appropriated all that was left after paying Bent, he was guilty of larceny, irrespective of the question whether Teeling retained possession, according to the dicta in *Commonwealth* v. *Barry*, 124 Mass. 325, 327, under the generally accepted doctrine that if a party fraudulently obtains possession of goods from the owner with intent at the time to convert them to his own use, and the owner does not part with the title, the offence is larceny. Even if the possession had passed to the defendant, there can be no question that the title remained in Teeling until the money should be handed to Bent. See note to *Regina* v. *Thompson*, Leigh & Cave, 225, 230.

In this case, however, by the terms of his agreement with Teeling, the defendant had the right to retain ten dollars out of the moneys in his hands, and it may be argued that it is impossible to particularize the bills which were stolen, seeing that the defendant appropriated bills to the amount of one hundred and ninety-five dollars all at once, without distinguishing between the ten he had a right to select and the one hundred and eighty-five to which he had no right. This argument appears to have troubled some of the English judges in one case, although they avoided resting their decision on that ground. *Regina* v. *Thompson*, Leigh & Cave, 233, 236, 238. If the argument be sound, it might cause a failure of justice by the merest technicality. For it easily might happen that there was no false pretence in the case, and that a man who had appropriated a large fund, some small part of which he had a right to take, would escape unless he could be held guilty of larceny. We think the answer to the argument is this. All the bills belonged to Teeling until the defendant exercised his right to appropriate ten dollars of them to his claim. He could make an appropriation only by selecting specific bills to that amount. He had no property in the whole mass while undivided. If he appropriated the bills

as a whole, he stole the whole, and the fact that he might have taken ten dollars does not help him, because he did not take any ten dollars by that title, or in the only way in which he had a right to take it. The later English cases seem to admit that a man may be liable for the larceny of a sovereign given him in payment of a debt for a less amount in expectation of receiving change, as well as in cases like *Commonwealth* v. *Berry, ubi supra*, where there is nothing due the defendant. *Regina* v. *Gumble*, L. R. 2 C. C. 1; *S. C.* 12 Cox C. C. 248. *Regina* v. *Bird*, 12 Cox C. C. 257, 260. See further *Hildebrand* v. *People*, 56 N. Y. 394.

Although the point is immaterial to the second ground of liability which we have mentioned, we may add that we are not disposed to think that the fact that the defendant may have been expected to select ten dollars for himself during the moment that the bills were in his hands was sufficient to convert his custody into possession. That right on his part was merely incidental to a different governing object, and it would be importing into a very simple transaction a complexity which does not belong there to interpret it as meaning that the defendant held the bills on his own behalf with a lien upon them until he could withdraw his pay.

It is not argued that the averment as to promissory notes is not sustained. *Commonwealth* v. *Jenks*, 138 Mass. 484, 488.

*Exceptions overruled.*