## CURRIER v. THE STATE.

[No. 19,581. Filed June 18, 1901.]

CRIMINAL LAW.—*Larceny.*—In a prosecution for larceny the evidence showed that defendant contracted with a plumbing company to furnish and lay certain steam pipes upon the express condition that defendant should first secure the company by the execution of his promissory notes for the contract price, with surety. When the pipe arrived at the depot the company authorized defendant to haul it on his wagon to his farm and deposit it there for their use. Upon the refusal of defendant to execute the notes the company demanded the pipe, a part of which was hidden by defendant, and which he refused to surrender unless the company would pay certain expenses. *Held*, that the concealment of the property by defendant, and his refusal to return it except upon the payment of a fictitious and fraudulent claim, constituted a felonious taking and appropriation, and was larceny, under the statute. *pp. 115-119.*

Currier *v.* State.

TRIAL.—*Misconduct of Counsel.*—*Practice.*—Available error cannot be predicated upon the misconduct of counsel in the argument of the case where no objection was made at the time, and no motion was made to set aside the submission and withdraw the case from the jury. *p. 119.*

CRIMINAL LAW.—*Indeterminate Sentence Law.*—*Instructions.*—*Definition of Larceny.*—In defining grand larceny in an instruction to the jury the court is not required, under the indeterminate sentence law, to state the penalty for such offense, since the jury has nothing to do with the penalty. *pp. 119, 120.*

From Elkhart Circuit Court; *J. D. Ferrall,* Judge.

William W. Currier was convicted of grand larceny, and appeals. *Affirmed.*

*J. S. Dodge* and *J. S. Dodge, Jr.,* for appellant.

*W. L. Taylor,* Attorney-General, *Merrill Moores* and *C. C. Hadley,* for State.

DOWLING, J.—The appellant was convicted upon an indictment for grand larceny. He contends that there was no evidence of his guilt, and that his request for a peremptory instruction to the jury directing his acquittal should have been sustained. The facts proved were these: The prosecuting witnesses, Charles H. Maloney and Edward Collins, co-partners, were plumbers engaged in business in the city of Elkhart, Elkhart county, Indiana. The appellant was the owner of a greenhouse in the same county. About November 1, 1900, he spoke to Maloney & Collins in regard to a change in the heating appliances in his greenhouse, and the substitution of pipes three inches in diameter for the one-inch pipe then in use. Maloney & Collins offered to furnish the new pipe, and to put it in place for about $450, but upon the express condition that the appellant should first secure them in the contract by the execution of his promissory notes for $40 each, maturing monthly, to the full amount of the contract price of the pipe, and the work of putting it in place, with one Lehman as surety. Appellant assented to this proposition, and Maloney & Collins ordered 1,000 feet of three-inch pipe from a Chicago house. Some

twenty days later, when the pipe arrived at the railroad depot at the city of Elkhart, they authorized the appellant to haul it on his wagon to his farm and to deposit it there for their use, which he did.  Before proceeding further, Maloney & Collins demanded the execution of the notes with the security promised.  The appellant at first said that Lehman was out of the city.  Afterwards, on being pressed by the prosecuting witnesses, he declared that Lehman was not worth anything.  Maloney & Collins, however, expressed their willingness to accept Lehman as surety on the notes. The appellant then said that he did not agree to give Lehman as his surety, but 'that Maloney & Collins were to put in the pipe, and that it was to remain their property until paid for.  The prosecuting witnesses told him they had not made that agreement, and did not do business that way.  On Saturday evening, appellant said to Maloney & Collins: "I've got a notion to make you a proposition.  I've a notion to tell you that you will have to pay me $50 damages if you don't start this job."  One of the firm said to him:  "We will be out Monday morning to get the pipe if you don't furnish the notes properly secured."  The notes not having been executed according to the contract, Maloney & Collins went to appellant's farm on the following Monday to remove their pipe, but found only sixty feet of it.  They then procured a search-warrant, and returned to the farm in company with the constable.  They saw wagon tracks leading into a field some 100 rods distant from appellant's barn, and, following the tracks, they discovered 260 feet of their pipe hidden in the tall grass and weeds in the field.  Maloney & Collins left a man to watch the pipe, and returned the next morning to take it away.  Appellant, in the meantime, had put up a sign on the fence inclosing the field with this inscription upon it:  "No one allowed to trespass on this property." While Maloney & Collins were looking for the pipe, and before they had discovered it, the appellant said to them that the matter could be settled, and he would return the re-

mainder of the pipe if they would connect up the old pipe in the greenhouse (which had been detached), or pay some $7 for the expense of connecting it. He also said that he had hidden the pipe, and had carried it so far away that it would cost him $3 to get it back. Maloney & Collins declined this offer. The constable told appellant he would give him until the next day to return the pipe. Appellant laughed at this, but said he would go to the store and see the firm that evening. He failed to do so. It was proved that appellant stated to one Roy DeCamp that he had some trouble with Maloney & Collins in getting them to carry out their contract, and that he had taken the pipe as a means of protecting himself, and to make them do their job; that he meant to keep the pipe until he brought them to terms; that if he did not succeed, they would never see the pipe again; and that he would put it where they couldn't find it. He asked this witness how long pipe would stay under water without spoiling. To another witness he said: "I took it [the pipe] over in the field, and I want them to replevin it."

About one month elapsed from the time the pipe was hauled from the depot to appellant's farm until Maloney & Collins went out to get it and bring it to their store. The quantity taken to the farm was 1,000 feet, which was worth $300. The quantity discovered and taken back by the prosecuting witnesses was 640 feet, of the value of $192. The portion never found, and totally lost to the prosecuting witnesses, was 360 feet, worth $108. It was shown that Maloney & Collins, at the request of the appellant, had sent one of their men to the greenhouse to disconnect the old pipe; but this was no part of their contract, the appellant having undertaken to detach and remove the old pipe.

The claim is made on behalf of the appellant that he took the property honestly under a claim of a right to its possession. It is impossible to adopt this view. Neither the title to the pipe, nor the right of possession, was vested in the appellant. True, the pipe was deposited on his land, but it

was there as the property of Maloney & Collins. It was there just as a box of their tools might have been. By the express terms of the contract, and as a condition precedent, the appellant was to make the prosecuting witnesses safe by the execution of his promissory notes for the contract price, with Lehman as his surety. After procuring the pipe, the firm refused to proceed a single step until this condition was complied with. Having broken his agreement without excuse, and after putting the prosecuting witnesses to great expense and inconvenience, the appellant made a groundless claim against them, the pretext for depriving them of their property. He fraudulently appropriated and then concealed it. Through the instrumentality of an officer and a search-warrant, a part of the property was recovered. A considerable portion was never found, and its owners were permanently deprived of it. The wrongful appropriation and concealment of the property by the appellant, in the absence of its owners, and without their consent, and the refusal of the appellant to return it, except upon the payment by the prosecuting witnesses of a fictitious and fraudulent claim, constituted a felonious taking and appropriation, and was larceny under the statute. According to the appellant's own confession, he intended to compel the owners of the property to settle with him *on his own terms,* to pay a claim they did not owe, or to perform work they were under no obligation to perform, or lose their property.

The case readily falls within the well recognized rules relating to the crime of larceny. "The mere delivery of property to another for a special purpose vests in the person receiving it only the temporary charge or custody; the possession of the property remains in the owner, and a conversion of it is larceny." "So, a delivery of property on condition of immediate payment does not transfer the right of possession to such property until the performance of the condition, and if the receiver wrongfully retain it without making payment, with felonious intent, he is guilty

of larceny." "To constitute the crime of larceny a felonious intent is, as a general rule, an indispensable ingredient; * * *. This intent must have been either to appropriate the property to the use and benefit of the taker, though he need not necessarily dispose of it, to establish such intent, or to wholly and permanently deprive the owner of it; and taking property with intent to conceal it for the purpose of inducing the owner, to offer a reward for its return, and to obtain the reward, is sufficient to constitute the crime." 12 Am. & Eng. Ency of Law (1st ed.), 768, 769, 776, 777; *State* v. *Anderson,* 25 Minn. 66, 33 Am. Rep. 455; *Robinson* v. *State,* 113 Ind. 510; *Davis* v. *State,* 10 Lea (Tenn.) 707; *State* v. *Homes,* 17 Mo. 379, 57 Am. Dec. 269, and notes; *Berry* v. *State,* 31 Ohio St. 219, 27 Am. Rep. 506; *Best* v. *State,* 155 Ind. 46; *Stilwell* v. *State,* 155 Ind. 552.

It is not a defense to a charge of larceny that the defendant had "an impression" that he had a claim to the property taken; this is not equivalent to an "honest belief." *Miller* v. *State,* 77 Ala. 71. Where the taking in the first instance is a trespass, the subsequent appropriation is a felony. *Regina* v. *Riley,* 14 Eng. Law & Eq. 544. Whether the appellant took and appropriated the pipe with a felonious intent was a question for the jury. Under the authorities, the proof was amply sufficient to authorize the conclusion that the property was so taken. *Morningstar* v. *State,* 55 Ala. 148; *Johnson* v. *State,* 73 Ala. 523.

The alleged misconduct of counsel for the State on the final argument of the case was one of the grounds upon which a new trial was demanded. So far as the record shows, no objections to the supposed statements of counsel were made at the time, nor was there a motion to set aside the submission, and to withdraw the case from the jury. Under these circumstances, no question as to such misconduct is presented to this court. *Blume* v. *State,* 154 Ind. 343.

The remaining errors discussed by counsel relate to in-

structions given and refused. In stating to the jury the statutory definition of grand larceny, the court was not required to say what the penalty for that offense was. The jury could only find by their verdict whether the appellant was guilty or not guilty as charged, and whether he was under thirty years of age. They had nothing to do with the penalty for the crime.

The modification of instruction numbered six, tendered by appellant, by striking therefrom the words "Larceny is something more than mere trespass", did not constitute reversible error. Full and clear definitions of the crime with which the appellant was charged were given, and the jury were properly instructed as to the difference between a mere trespass and the crime of larceny.

The peremptory instruction for a verdict of not guilty demanded by the appellant was properly refused. We find no error in the record. Judgment affirmed. Baker, J., took no part in this decision.