# REPORTS OF CASES

# THE COURT OF APPEALS

## DISTRICT OF COLUMBIA.

---

## TALBERT *v.* UNITED STATES OF AMERICA.

---

LARCENY; FALSE PRETENSES; INDICTMENT; TRIAL; EVIDENCE; PARTNER-
SHIP; AGENT; EMBEZZLEMENT; INTENT.

1. An indictment for obtaining by false pretenses, and for the larceny of,
certain articles of jewelry described as one finger ring, four finger
rings, a brooch, a locket, a stud, a locket, three finger rings, and a
finger ring, is not demurrable as containing an insufficiently specific
description of the articles, since the defendant may, if in doubt as
to the identity of the articles, move for a bill of particulars. (Citing
*Lauer* v. *District of Columbia*, 11 App. D. C. 453.)

2. A motion in a prosecution for obtaining by false pretenses, and for
the larceny of, certain articles, to arrest judgment upon the ground
that the indictment insufficiently described the articles, is properly
denied where the defendant did not move for a bill of particulars.

3. In a prosecution for obtaining by false pretenses, and for larceny of,
certain jewelry, in which it appears that the defendant, while en-
gaged in selling jewelry for the prosecuting witness, obtained the
articles by reporting a prospective purchaser, it is proper to admit
testimony of one who worked for the defendant and whose name the
defendant reported to the prosecuting witness as a prospective pur-

Vol. XLII.—1.

chaser of a ring, that he never expressed to the defendant a wish to purchase a ring, and that he signed notes as for the ring at the request of the defendant, who had previously delivered the ring to another who pledged the same, such testimony being relevant to the charge that the defendant obtained possession of the ring by trick and artifice.

4. The crime of larceny on the part of one who obtained possession of goods for the specific purpose of selling for the owner to another, and who turned them over to a third person, is complete without proof that the third person pledged them with the defendant's approval.

5. The admission, in a trial of an indictment for false pretenses and larceny, of the testimony, in behalf of the prosecution, of a policeman who had been excepted from an order for the exclusion of witnesses from the room, made on motion by the defendant, is not error where such testimony was formal and concerned matters not testified to by others.

6. A merchant's salaried credit manager is not to be regarded as a partner merely because some account is taken of profits and losses in the regulation of his salary.

7. A person may commit larceny by obtaining goods by fraud, trick, or artifice, with intent to deprive the owner of the same and to appropriate them to his own use.

8. The refusal of a requested instruction is not error where its subject-matter is substantially embraced within a charge given by the court.

9. One who appropriates to his own use goods of which he has possession as an ordinary salesman, with authority to pass title and receive payment or part payment or such assurance as he is authorized to receive, is guilty, not of larceny, but of embezzlement under D. C. Code, sec. 834 [31 Stat. at L. 1325, chap. 854], defining the latter to be the wrongful conversion to his own use by any agent, attorney, clerk, or servant of anything of value which shall come into his possession or under his care by virtue of his employment. (Citing *Woodward* v. *United States*, 38 App. D. C. 323.)

10. Larceny, and not embezzlement, under D. C. Code, sec. 834, defining embezzlement to be the wrongful conversion, to his own use, by any agent, attorney, clerk, or servant of anything of value which shall come into his possession or under his care by virtue of his employment, is committed by a salesman when, in the absence of a purchaser or an approved sale, he appropriates to his own use goods intrusted to him for the special purpose of showing them to a prospective customer whose name he is to submit to the employer, who is to decide whether the sale shall be consummated or not.

11. Evidence held sufficient to go to the jury on the question whether goods were intrusted to the defendant, as salesman, for a special purpose, so as to render his subsequent conversion of them larceny rather than embezzlement.

12. To constitute the crime of larceny, an intent to convert the goods at the time of obtaining possession is essential only where possession is obtained by fraud, trick, or artifice; and in other instances it is sufficient that the intent existed at the time of conversion.

#### On Application for a Rehearing.

13. The act of Congress of March 3, 1913, amending D. C. Code by adding sec. 851b, which, without characterizing the offense as larceny, prescribes punishment for any person who fraudulently misappropriates property intrusted to him for application to the owner's use, cannot be construed to have a bearing upon the question of larceny by fraud or trick, even apart from the fact that a proviso therein declares that it shall not be construed to alter or repeal certain preceding sections, one of which, defining larceny, has been construed to embrace larceny by fraud or trick.

No. 2606. Submitted February 2, 1914. Decided March 2, 1914. Application for rehearing submitted March 9, 1914. Decided April 6, 1914.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, holding a criminal court, convicting him of larceny.     *Affirmed.*

The COURT in the opinion stated the facts as follows:

An indictment in eleven counts charged Warren E. Talbert, appellant, with the crimes of obtaining certain articles of jewelry by false representations and pretenses, and with larceny of the same. The different articles were described as one finger ring; four finger rings; a brooch; a locket; a stud; a locket; three finger rings, and a finger ring. The value of each article is alleged; the least in value being charged as $35. The ownership is alleged to be in one Charles Schwartz.

The indictment was demurred to on the grounds: 1. That it fails to charge the crime with precision and certainty. 2. The description of the articles is not sufficiently definite and

specific. This was overruled, and exception taken. Counts 1, 3, 5a, and 10 charged the false pretenses. Counts 2, 4, 5b, 6, 7, 8, and 9 charged larceny.

The court directed a verdict of not guilty on the false pretenses counts 1, 3, 5a, and 10, and on the larceny count 6. The jury returned a verdict of guilty as charged in counts 2, 4, 5b, 7, 8, and 9.

Motion in arrest of judgment was filed by defendant, which elaborates the special objections to the indictment for want of sufficient description of the articles of the alleged larceny. It is also objected that there is no such offense under the District Code as larceny by trick or device; and that the proof tended to show embezzlement, and not larceny. This was overruled with exception reserved, and after the denial of a motion for new trial, the defendant was sentenced to confinement in the penitentiary for two years.

The bill of exceptions recites that, before the introduction of the evidence, the defendant moved to require the government to elect whether the defendant should be tried on the counts charging false pretenses or on those charging larceny. To the denial of this motion the defendant excepted.

The evidence tended to show that Charles Schwartz was a jewelry dealer in the city of Washington; that defendant represented to him that he had some trade with which he could do business on the instalment plan. It was agreed that defendant was to bring in slips of any prospective customer; that only after Schwartz approved the slips the goods were to be delivered. Pursuant to this arrangement defendant brought in the names of some customers. Sometimes defendant would state that he had prospective customers, without giving names, and the jewelry would be turned over to him to be shown to them. One day defendant stated that he had a customer for a cluster diamond ring, without mentioning the name, and it was delivered to him. He later brought in a slip with the name of C. A. Norris, and said the ring had been sold to Norris. Later, that he reported a prospective customer—one Rose Wise—for four diamond rings worth $40 each. Later he reported a pro-

spective purchaser—Rose Parker—for a brooch worth $300. This was delivered to defendant, but never paid for. Later he reported a prospective purchaser—unnamed—for a diamond locket. It was turned over to him for exhibition to the customer, and was never returned or paid for.

Similar testimony was given as to a diamond stud worth $300. Later a prospective purchaser—Ella Brown—was reported for a diamond ring, which was delivered to defendant and never returned. Cross-examined, Schwartz testified that defendant had built up a considerable trade on the instalment plan, and brought a lot of people to purchase goods, payable in monthly instalments. Defendant was to have 10 per cent commissions on approved sales. He had the privilege of picking out goods and taking them out to show, but not to sell without Schwartz's sanction; provided he signed a memorandum for them. Schwartz owes defendant commissions on sales made by him. Defendant was the judge of whether he had a prospect of sale and was allowed to take out jewelry as he saw fit; if the purchaser did not want the article he was to return it; and did return "lots of property" during the two years of his engagement.

The names of prospective purchasers were not written in the book by defendant. On re-direct examination witness produced a slip marked "Salesman Talbert," of December 29, 1911, which referred to the cluster ring which was to be sold to Norris. Another represented the sale of four diamond rings, at $40 each, to Rose Wise. An entry in the book of deliveries to defendant showed, on January 17, one diamond sunburst, valued at $300. Another entry showed the diamond stud. Witness was paid $10 on the $175 ring—the Norris ring—and received some notes, one of which has been paid. For the 10 per cent defendant was to sell, and collect for the goods sold in "the division." He was not to deliver the goods to customers unless he reported the names and the sales were approved, after investigation, except in the case of old customers like Rose Wise or Rose Parker. After the Norris ring had been out three weeks, witness demanded it, and the notes of Norris were delivered to him.

Ella Brown testified that she never told defendant she desired to purchase a $300 diamond ring; that he never brought it to her. She had looked at some manicure sets brought by defendant and exhibited to girls in her house, but had never seen the ring. Rose Parker testified that she had never told defendant she wished to purchase a brooch, and he did not show her one. She had bought a locket and earrings from him.

Rose Wise testified that she never told defendant she wished to purchase the four rings set with diamonds; and he never showed her any such rings. She had bought two manicure sets, a watch, and a pocketbook.

Charles A. Norris testified that he was working for defendant in the fall of 1911, helping him to sell jewelry. Was to be paid a commission, but the only thing he got "was rings he gave me in place of money I was to get." He said that he never told defendant he wanted to buy a diamond ring for $175. He signed some notes for the ring which Kitty Brown was to get. She gave the ring back to defendant. Defendant told witness as to the notes: "That is all right, I will pay them." Witness said, "I shall not pay them." He said, "he would tend to those notes." Defendant made him sign the notes. They were signed before the delivery of the ring to Kitty Brown. Was present when the ring was delivered to her. Defendant told witness that Kitty Brown had a large account at the store and could not get any more credit, and he must sign the notes so she could get the ring. She later returned the ring to defendant. Witness had never paid any one of the notes. Defendant objected to any evidence relating to the notes, as "they spoke for themselves;" and also to the understanding about Kitty Brown as irrelevant. Both objections were overruled and exceptions noted. Witness further testified that he pawned a locket for defendant in December; that he "pawned stuff at Heidenheimer's, Burnstine's, and Horning's." (Cross-examined.) That he received a ring from defendant for his services, and pawned the same on his own account at Horning's; afterwards sold the ticket to one John Birch. Signed the notes, knowing what he was doing, for the cluster ring. Was present when defendant

would go to the house of Kitty Brown and try to sell jewelry there. Did not see Schwartz about the notes. Got notice from bank about the notes, and defendant told him he would attend to it. Was never sued on the notes. Frost, a janitor of the house where Kitty Brown roomed, testified that he was called to her rooms by Kitty Brown. Defendant was in the back room and she in the front room. He could hear what was said. He was in the back room; had a table in front of him on which there were a lot of pawn tickets and money. He gave witness some tickets and money, for which witness got some articles at Heidenheimer's and Horning's, and brought them to him.

Kitty Brown gave him a brooch—sunburst—and told him to go to Burnstine's and get $125 on it. He pawned it as directed. While at Burnstine's the clerk telephoned to Kitty Brown about it. Delivered her the package handed him by the clerk. Exception was taken by the defendant to the testimony relating to pawning the brooch. William Tibbs, employed at the house of Kitty Brown, testified that he saw defendant give the four rings to Kitty Brown. At her direction, in presence of the defendant, he went to Heidenheimer's and reported to Kitty Brown, in defendant's presence, the amount that Heidenheimer told him. The next day he pawned the rings with Heidenheimer, returning the ticket and money to her. He identified the rings shown to him. Exception was taken to this testimony. Samuel Miller, Burnstine's clerk, testified to the visit of Frost with the brooch for pawn. Would not lend more than $100. She was called by phone and approved the amount, which was sent to her. He identified the brooch as one delivered by him to Detective Evans. Harry Columbus, clerk for Horning, testified as to the system of entries of pawns, and testified to the entry of a pledge by Frost, acting for Kitty Harris, alias Brown, on January 16, 1912. Exceptions were noted to this evidence.

William A. Pennoyer testified that he was manager of the bookkeeping department of Schwartz; identified a cluster ring which had been turned over to defendant, who said he had a customer for it. Was turned over to him to sell to Rose Wise. He turned over to defendant the diamond sunburst which he

said he wanted to show to Rose Parker, who had expressed a de-- sire to buy one. A locket set with diamonds, described in count 6, was shown to witness, who had no recollection of it.

The diamond stud was delivered to defendant. The diamond ring of the tenth count was identified as one delivered to defendant. Cross-examined, witness said that he had personal interest in the business of Schwartz; was not a partner. He receives a stated salary, and in the contract regulating his compensation some account is taken of profits and losses. Has no interest in the goods. (Further re-examination.) Defendant said that he had odd times and rights and could make some good sales. The first arrangement was that he was to bring in the customer, or send his card by the customer. Was the cause of a lot of business. Afterwards he said it was impossible always to bring customers, and he was allowed to take out articles on memorandum signed by him. If the customer was not satisfied to purchase, he was to return the article.   -

Certain pawnbrokers were called. Heidenheimer testified to the Tibbs-Kitty Brown transaction, the Norris pledge of locket; also a $300 diamond ring pledge by Daisy Brill for Kitty Brown. This was shown to be the ring described in count 10, which defendant received to show to a prospective purchaser, Ella Brown.

Defendant excepted because no connection had been shown between defendant and Daisy Brill.        .     .    .

A clerk for Horning testified to the pledge by Ralph Harris on January 18, 1912, of a stud, a solitaire diamond—and two rings—solitaire diamond claws, which had been delivered to Evans, the detective. The following articles were offered in evidence by the government: The diamond ring of the 1st count; the four diamond cluster rings of the 3d and 4th counts; the diamond sunburst of counts 5a and 5b; the locket of count 6.; the stud of count 7; the three rings and the $300 diamond —Ella Brown—ring of count 9; and also the latter of count 10. Policeman O'Dea was called by the government. Defendant objected to the witness as having been in the room during the trial. It appears that a motion of defendant to exclude all

witnesses but O'Dea, who was needed by the government, had been granted. The court overruled the objection and defendant excepted.

He testified that he first saw the cluster ring of count 1 in Horning's possession; got the locket of count 6 from Heidenheimer; four rings from Heidenheimer also; sunburst from Burnstine's; ring of count 10 from Heidenheimer's. Witness had made an effort to locate Daisy Brill, without success. To this defendant excepted. Ralph Harris is the husband of Kitty Harris, who is also known as Kitty Brown. The district attorney explained his failure to call Kitty Brown as a witness because she was under indictment in respect of the transactions, and could not be compelled to testify. Defendant excepted to this statement. At the close of the evidence for the government the defendant moved the court to direct a verdict upon all of the counts; which was denied, with exception noted. He then moved a verdict on the ground that the indictment alleges ownership of the property in Schwartz, and it appeared from the evidence of Pennoyer that he was a partner of Schwartz. He then moved for a verdict on counts 5a and 5b on the ground that the article described is a brooch, and the proof showed it to be a "sunburst." These motions were denied and exceptions taken.

Defendant then called two witnesses—Porter and McCormick—who testified that they had seen defendant with jewelry in large and small quantities. That Norris told McCormick he had a ring which belonged to Talbert, and as he owed him money he intended to keep the ring. Burch testified that he purchased a pawn ticket from Norris, which he afterwards sold back to Talbert.

The court announced that he would submit the case to the jury on the larceny counts only, except count 6.

The defendant asked: First, an instruction to find for the defendant; second, that if they believe Schwartz gave the defendant the goods, relying upon the fact that he could make sales for him, and not upon the alleged false representations, they must acquit; third, that to convict, the jury must believe,

beyond reasonable doubt, that defendant with intent to defraud did feloniously, knowingly, and designedly represent to Schwartz that he had prospective purchasers; that Schwartz, relying on such representations and for no other reason, was induced to deliver the jewelry described in the indictment; fourth, that the fact that defendant stated he had a purchaser for certain articles is not a false statement unless they believe that Schwartz, by the use of diligence, could not have ascertained whether he had a purchaser or not; fifth, that the statements, if made, that if Schwartz would deliver defendant the articles in the indictment he would sell them, are future promises, and not false pretenses within the meaning of the law. These instructions were refused, and exceptions noted. The court gave two instructions for the defendant. One—No. 6—is to the effect that it is not every taking and carrying away of the property of another that will constitute larceny; but a felonious intent must be shown to have accompanied the taking; and all the facts and circumstances are to be taken into consideration in determining the intent. The other—No. 7—related to the province of the jury in determining the credibility and weight of the evidence, and their power to take into consideration the character and motives of the witnesses, etc. Instructions 8 and 9 asked by defendant were refused, and the action of the court excepted to. No. 8 is to the effect that the jury must be satisfied beyond a reasonable doubt, in order to convict, that at the time defendant received the property he intended to steal it; and if he took it for a lawful purpose, and afterwards appropriated it, he is not guilty of larceny. Another instruction—No. 9—is substantially the same as No. 4 before recited. No. 10 is to the effect that, to convict, the jury must believe beyond a reasonable doubt that defendant did not have the right to take the goods out of the store without mentioning any particular persons to whom he was going to show the goods. Both were refused, and exceptions noted.

The charge of the court, in submitting the larceny counts, save count 6, explained that there were two grounds upon which a verdict of guilty might be returned, if the jury should

be satisfied, beyond a reasonable doubt, of their existence. The first of these is that the defendant procured possession of certain articles by trick, artifice, or fraud, intending at the time to obtain possession to appropriate them to his own use. "Ordinarily in a case of larceny the taking is by force or by stealth, and without the consent of the owner; but although the goods were taken with the consent of the owner, it may be larceny if that consent was procured by some fraud, trick, or artifice, the obtainer intending at the time feloniously to appropriate them to his own use and deprive the owner of them." This had application to those counts wherein the evidence tended to show that possession of the goods had been obtained for exhibition to a prospective purchaser; and that this representation was false; and that the articles had not been returned to the owner.

The second ground was thus stated:

"The other theory is that even if the defendant obtained possession of these goods, any of the goods named in the counts which I have submitted to you, if he obtained possession of any of those goods lawfully at the time, and honestly intended then to make a sale of them or to find a purchaser for them, but had possession of them only for the purpose of exhibiting them to some prospective purchaser and of then returning the article to Mr. Schwartz, with the name of the prospective purchaser, for him to say whether he would sell the articles or not; that after he had thus honestly obtained possession of the goods for that limited purpose he made up his mind feloniously and fraudulently to steal those same goods and appropriate them to his own use, wickedly and corruptly and to deprive the owner of them, and did so,—that that would constitute larceny and would be a taking from the time he did so appropriate them to his own use with that unlawful and felonious intent. So that as to this second theory, it is important for you to make up your mind in what capacity the defendant did receive these articles. If he had them as the ordinary salesman has goods to sell, with authority to sell and pass the title on receiving payment, or on receiving part payment, or such assurances as

his employer has authorized him to receive; if he was that kind of an agent, then this theory of the law I am speaking about would not apply, and he would not be guilty of larceny even if he did afterwards appropriate them to his own use. That would be embezzlement, and not larceny. So that the question as to whether he was that kind of an agent or whether he was nothing but a servant intrusted with an article of property for the single purpose of showing it to a person to see whether or not that person would be willing to purchase it, and then, if the person was willing to purchase it, to bring it back to his employer, and submit the name of the purchaser, and have the employer say whether he would consummate the sale or not, or if the purchaser did not want the property to return the ring in the same way, or whatever the article of property was. Now, was that the limit of his authority when he received these goods? Was that the limit of his authority; namely, just to exhibit them to some person to see whether that person would be satisfied to purchase them? If that was the only right he had as to them, then if he, having them in his possession for that limited purpose only, made up his mind that he would appropriate them to his own use, feloniously and fraudulently, and to take away the owner's property in them, then it would be larceny if he did it with that purpose and intent, because the possession of them under the law was still in Mr. Schwartz, if those were the facts in the case."

The exception to this charge was general. The jury found the defendant guilty on all of the larceny counts except count 6. On this and the other counts the verdict was not guilty, pursuant to the direction of the court.

*Mr. James A. O'Shea* for the appellant.

*Mr. Clarence R. Wilson* and *Mr. S. McComas Hawken* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Forty-six errors have been assigned, all of which have been considered, but only certain ones will be discussed.

1. The demurrer to the indictment was correctly overruled. The description of the articles was sufficiently specific. Had the defendant been in real doubt as to the identity of the several articles with the theft of which he was charged, he could have moved the court for a bill of particulars. *Lauer* v. *District of Columbia,* 11 App. D. C. 453, 454. This he failed to do.

For a stronger reason the motion in arrest of judgment based upon the same grounds was rightly denied.

2. There was no error in admitting the evidence of the witness Norris that he had not told the defendant that he wanted to buy the $175 ring; or in permitting him to show that he signed the notes therefor, at the request of defendant, after he had delivered the ring to Kitty Brown. It was relevant to the charge that he had procured the possession of the ring by trick or artifice. As to the evidence relating to the pledging of certain articles by Kitty Brown and others, the evidence tended to show that this was with the approval of defendant.

Moreover, the pledging of the articles was not material to the conviction of defendant. If he failed to return articles delivered to him for a particular purpose, and thereby converted them to his own use, the offense of larceny, if that was his offense, was completed.

3. There was no error in permitting the witness O'Dea to testify. The record shows that an order was granted on defendant's motion, excluding the witnesses from the court room; but O'Dea was expressly excepted. Moreover, his testimony was formal and was relative to matters that had not been testified to by others.

4. At the conclusion of the government's evidence, the defendant moved the court to direct a verdict of acquittal on the ground that the indictment alleges property in Schwartz alone, while the proof showed that it was the property of Schwartz and

Pennoyer as partners. The witness, Pennoyer, had testified that he was not a partner, but an employee of Schwartz, and did not own any of the goods. He was credit manager upon a salary; in regulating his salary some account is taken of profits and losses. The court was right in holding that this did not constitute him a partner of Schwartz. *Berthold* v. *Goldsmith,* 24 How. 536, 542, 16 L. ed. 762, 764; *Meehan* v. *Valentine,* 145 U. S. 611, 619, 36 L. ed. 835, 840, 12 Sup. Ct. Rep. 972.

The exception reserved to the charge of the court is too general; but the refused instructions considered in connection with the charge are deemed sufficient to raise the several questions of law that have been argued.

(1) Did the court err in charging the jury, in application to the facts of several of the counts submitted to the jury, that larceny may be committed when the possession of goods is obtained by fraud, trick, or artifice, the obtainer, at the time, intending to deprive the owner of them and to appropriate them to his own use? We are of the opinion that he did not.

There is nothing in the language of the section of the Code defining larceny that negatives the conclusion; it is clearly reasonable, and has the support of many well-considered cases. *Welsh* v. *People,* 17 Ill. 339, 341; *Stinson* v. *People,* 43 Ill. 397, 398; *Smith* v. *People,* 53 N. Y. 111, 113, 13 Am. Rep. 474; *Com.* v. *Lannan,* 153 Mass. 287, 289, 11 L.R.A. 450, 25 Am. St. Rep. 629, 26 N. E. 858. The third prayer of defendant upon this point is substantially embraced in the charge; hence its refusal was not error.

(2) The second question arises on those counts where there was evidence tending to show that when defendant obtained the goods he had in view certain prospective purchasers; but, failing to make sales and report them according to his authority and instructions, afterwards converted them to his own use. In other words, did he become invested with such possession and right of possession that his subsequent conversion amounted to embezzlement rather than larceny? The court, as we have seen, charged the jury that if defendant had possession as an ordinary salesman with authority to pass the title on receiving pay-

ment or part payment, or such assurances as he was authorized to receive, and then appropriated the articles to his own use, the act would be embezzlement, and not larceny. If, on the other hand, his possession was for the purpose of showing the goods to a prospective purchaser to see if he was willing to buy the same, and, if so, to submit the name of the purchaser to his employer and have him determine whether he should consummate the sale; but if no purchaser be found, or no contract approved, he was to return the article to the owner; then, if having the article for that limited purpose only, he later made up his mind fraudulently to appropriate it to his own use,—the possession, in law, would still be in the true owner, and the offense would be larceny. In such case it was added: "He was like any other servant intrusted with a piece of property to do a particular thing with it; just the same as if you sent your horse by a servant to the spring for water; and he ran away with it and stole it, he was taking away your possession of the horse, because he had not any possession of the horse in the sense in which that word is used."

The facts and circumstances of the relations of the parties and of the possession were left to the determination of the jury.

The distinction between larceny and embezzlement, under the circumstances of a particular case, often becomes a close one, and in defining it the authorities are in apparent conflict in many instances. How much of this is referable to the language of particular statutes it is unnecessary to inquire. Embezzlement, as a distinct offense defined in our Code, is where any agent, attorney, clerk, or servant wrongfully converts to his own use, etc., anything of value which shall come into his possession or under his care by virtue of his employment, etc. Code, sec. 834 [31 Stat. at L. 1325, chap. 854]. Under this it must be determined, under the facts of the particular case, whether the acquired possession constitutes possession of the character intended. In *Woodward* v. *United States,* 38 App. D. C. 323, a case of embezzlement relied on by the appellant, the distinction was a close one, but under the particular facts, the court decided that the possession of the money passed into the general agent

of the owner under such circumstances as contemplated by sec. 834, and its appropriation was, therefore, embezzlement as found by the jury, and not larceny as argued. Some general expressions in the opinion must be considered in the light of the particular facts.

No hard and fast construction of sec. 834 as regards possession was declared. In earlier cases in this District it has been held that where property had been delivered to a servant or agent, with limited authority for a special purpose, and he afterwards appropriated it to his own use, the act was larceny; the possession, in law, remaining in the owner. *United States* v. *Strong,* 2 Cranch, C. C. 251, 252; Fed. Cas. No. 16,411; *United States* v. *Rodgers,* 1 Mackey, 419, 426.

Numerous authorities sustain the proposition stated by the court of appeals of New York: "The rule is that when the delivery of goods is made for a certain special and particular purpose, the possession is still supposed to reside, not parted with, in the first proprietor." *Smith* v. *People,* 53 N. Y. 111, 113, 13 Am. Rep. 474; *People* v. *Call,* 1 Denio, 120, 123, 43 Am. Dec. 655; *Oxford* v. *State,* 33 Ala. 416, 418; *State* v. *Davenport,* 38 S. C. 348, 353, 17 S. E. 37; *Crook* v. *State,* 39 Tex. Crim. Rep. 252, 253, 45 S. W. 720; *Currier* v. *State,* 157 Ind. 114, 119, 60 N. E. 1023, 14 Am. Crim. Rep. 562; *Kirk* v. *Garrett,* 84 Md. 383, 406, 407, 35 Atl. 1089. See cases cited 18 Am. & Eng. Enc. Law, 2d ed. 474; 25 Cyc. 46.

The charge of the court defined the two kinds of possession of servants or agents in terms which the jury could not misunderstand, leaving it to them to determine whether the evidence established the one kind or the other. Their verdict found that the defendant was the servant of the owner in the transaction charged in those counts, wherein the evidence tended to show that the possession had not been obtained by trick or artifice, but for exhibition to prospective purchasers, upon whose failure to purchase, the defendant, instead of returning the goods, appropriated them to his own use; that his possession thus obtained for a special, limited purpose, did not destroy the legal possession of the owner; and therefore that his subsequent con-

version of the article was larceny. The evidence was sufficient to warrant its submission to the jury on this issue.

Under those conditions it was not necessary that there must have been an intent on the part of the defendant, at the time he received the articles, to convert them to his own use. That immediate intent was necessary only in those transactions where the possession had been obtained by fraud, trick, or artifice; and as to them the court so charged. But in the other instances it was only necessary that the intent to appropriate the articles to his own use should have come into existence at the time of the appropriation. See *People* v. *Call,* 1 Denio, 120, 124, 43 Am. Dec. 655.

We perceive no reversible error in the proceedings, and the judgment is therefore affirmed.                    *Affirmed.*

A motion by the appellant for a rehearing, filed March 9, 1914, was denied April 6, 1914, Mr. Chief Justice SHEPARD delivering the opinion of the Court:

Appellant moves for a rehearing, calling attention for the first time to an act of Congress, approved March 3, 1913, which amends the Code, adding the following section, 851b: "That if any person intrusted with the possession of anything of value, including things savoring of the realty, for the purpose of applying the same for the use and benefit of the owner or person so delivering it, shall fraudulently convert the same to his own use, he shall, where the value of the thing so converted is $35 or more, be punished by imprisonment for not less than one nor more than ten years, or by a fine of not more than $1,-000, or both; and where the value of the thing so converted is less than $35 he shall be punished by imprisonment for not more than one year, or by a fine of not more than $500 or both; Provided, that nothing contained in this section shall be construed to alter or repeal the foregoing sections contained in subchap. II. of chap. XIX. of this Code."

The subchapter recited contains the sections defining larceny, embezzlement, and other offenses against property. The new

section introduced by the amendment is at the end of the sub-chapter, and defines a specific offense without expressly declaring it to be larceny or embezzlement.

The contention is that this section "supersedes and takes the place of the larceny by trick section, for Congress has specifically .enacted legislation on the subject."

In the opinion it was declared that under the section defining the offense of larceny, the offense may be committed when the possession of goods is obtained by fraud, trick, or artifice, the obtainer intending, at the time, to deprive the owner of them and to appropriate them to his own use. Aside from the fact that it is expressly provided that the section shall not be construed to alter or repeal the foregoing sections of the sub-chapter, we fail to perceive any bearing it has upon the question of larceny by fraud or trick.

What other purpose the new section may have been intended to serve is not involved.

The motion is denied.                    *Denied.*

The Supreme Court of the United States denied a petition for the writ of certiorari, June 13, 1914.