WARREN *v.* STATE OF INDIANA.

[No. 28,092. Filed September 26, 1945. Rehearing Denied October 22, 1945.]

*Floyd G. Christian* and *Ralph H. Waltz,* both of Noblesville, and *Oscar F. Smith,* of Indianapolis, for appellant.

*James A. Emmert,* Attorney General, and *Frank E. Coughlin,* First Assistant Attorney General, for the State.

RICHMAN, C. J.—Waiving a jury appellant was tried and convicted of larceny of four cans of Prestone. The only question presented is whether the finding is contrary to law. The evidence leaves no doubt that for more than six months he continued to take property of his employer and convert it to his own use, but he contends that his employment was such as to make his crime embezzlement rather than larceny.

He was employed as a member of a maintenance crew

under a foreman in Plant No. 2 of the Allison Division of General Motors Corporation. The plant contained tanks for reception and storage of gasoline, oil and Prestone. To a storage building housing Prestone both the foreman and appellant had keys. "The Chief Engineer . . . had exclusive control in Plant No. 2 of this Prestone." Appellant was not authorized to remove Prestone from the building except on requisition from some other person in authority. One of appellant's duties was to receive gasoline. A confederate (who pleaded guilty to the same affidavit upon which appellant was tried) was employed by a trucking company to deliver gasoline to the plant and thus obtained ingress. His truck was used to take away Prestone abstracted by appellant from the storage building. The Prestone was sold and the proceeds divided by appellant and the truck driver. A statement signed by appellant, and admitted in evidence, related numerous such transactions from June through August, 1943. In November they "took out some 30 to 35 drums of Prestone," each containing 55 gallons and sold them for $83 per drum. Appellant's employer became suspicious and early in January, 1944, investigators observed appellant surreptitiously placing four cans in the truck. It was followed away from the plant and the cans, containing Prestone, were recovered. No contention is made by appellant that he had a requisition when he took this Prestone. There was other testimony more favorable to appellant's theory, but upon appeal we look only to the evidence tending to support the finding.

The facts related bring the case within the rule of *Colip* v. *State* (1899), 153 Ind. 584, 55 N. E. 739, 74 Am. St. Rep. 322; *Currier* v. *State* (1901), 157 Ind. 114, 60 N. E. 1023; *Vinnedge* v. *State* (1906), 167 Ind. 415, 79 N. E. 353; and cases

from other jurisdictions cited in a note in 125 A. L. R. at p. 368, holding that an employee who has "mere custody of personal property, as distinguished from legal possession". and with *animo furandi* converts same to his own use is guilty of larceny. Here there was no "relation of special trust in regard to the article appropriated" which this court in *Colip* v. *State, supra,* said was necessary to an embezzlement. Appellant had access to the storage building but the Prestone therein was in the possession of the employer. We see no essential difference between this case and the hypothetical case of the watchman referred to in the following quotation from *Vinnedge* v. *State, supra:*

"Where there is at most but a naked possession or control—that is, a bare charge—or where the access consists of a mere physical propinquity as an incident of the employment, the felonious appropriation should be regarded as larceny. The reference in the embezzlement statute to officers, agents, attorneys, clerks, servants, and employes is plainly indicative of the intent to limit the denouncement of the statute to cases in which such persons have, as an element of their employment, a special trust concerning the money, article, or thing of value that involves an actual possession thereof or a special right of access to or control over the same. This requirement would not be satisfied, as we may indicate by way of illustration, by the mere control, possession, or physical opportunity of access, which a watchman in charge of a store might have. As before indicated, the relationship contemplated by the statute is one of special trust and confidence; a relationship in which there inheres, either for the particular transaction or for all purposes, a special right of access to, control, or possession of, the money, article, or thing of value which is appropriated."

Usually a watchman carries a key. Appellant's key made access easier but did not give him possession.

We regard as immaterial the fact that he was bonded against embezzlement. It perhaps was a circumstance which the court might have taken into consideration in determining the relationship of the parties, but it was in no sense controlling. Appellant's contention that *animus furandi* was not proved is controverted by the evidence showing that the crime was preceded by similar consummated thefts over a period of many months. Similar transactions may be shown to prove felonious intent, knowledge and other similar states of mind. *Anderson* v. *State* (1941), 218 Ind. 299, 32 N. E. (2d) 705.

The cases relied upon by appellant belong to another category. *Davis* v. *State* (1925), 196 Ind. 213, 147 N. E. 766, recognizes the principle quoted from *Colip* v. *State, supra,* but holds that the facts establish the crime of embezzlement. The appellant therein received money as treasurer of an association and later converted it to his own use. He had exclusive possession and control of the fund under a trust to account to his employer. In *Jones* v. *State* (1877), 59 Ind. 229, a merchant gave his employee some money in an unsealed envelope, directing him to deliver it to other merchants as the purchase price of a load of flour. On the way he succumbed to temptation and fled with the money to another state. *State* v. *Wingo* (1883), 89 Ind. 204, had similar facts. Each employee was given exclusive possession of the property under a special trust and later formed the felonious intent. The Wingo case was cited in *Gentry* v. *State* (1945), *ante,* p. 459, 61 N. E. (2d) 641, as holding that there may be embezzlement of chattels, and *Mendenhall* v. *State* (1920), 189 Ind. 175, 126 N. E. 434, cited therein to the contrary, was overruled. The facts in *Gentry* v. *State, supra,* clearly distinguish it from the case at bar. In *Young* v. *State* (1932), 204

Ind. 331, 183 N. E. 100, the court was concerned with the question whether the crime was embezzlement or obtaining goods under false pretenses. An employee of an insurance company having authority to adjust claims was entrusted with a check payable to a claimant. By artifice he procured the payee's endorsement of the check and then deposited it to his own account, paying the claimant less than the agreed settlement and pocketing the difference. The court's problem was to determine whose money was taken. Since a check is merely an order to pay out of funds on deposit in the maker's bank account the court concluded that the money was appropriated from the company and treated the crime as embezzlement. Judge Treanor stated that to constitute the crime of embezzlement "it is not necessary that he have possession of the money or thing of value." This is *obiter dictum*. If it were argued that the check was embezzled the fact appears that the agent had possession which was not released in obtaining the endorsement. If it was the money which was embezzled he acquired possession when the check was cashed. It was still the company's money with a special trust on the part of the agent to pay it to the claimant.

Judgment affirmed.

Note.—Reported in 62 N. E. (2d) 624.